# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEBNIS ROCHEZ MENDOZA,**
**Plaintiff,**

v.                                                            Case No.   **6:23-cv-1352-ACC-RMN**

**CRAIG WILLIAM CARDWELL,**
**Defendant.**

---

## ORDER

This cause comes before the Court on the Motion for Summary Judgment (Doc. 37) filed by Defendant Craig William Cardwell on May 31, 2024. The same day, the Court entered an Order requiring *pro se* Plaintiff Lebnis Rochez Mendoza[1] to respond to the Motion for Summary Judgment by June 21, 2024, noting that if he "fail[ed] to respond to the motion," the Court may "declare that the facts in the affidavits and/or documents supporting the motion are established as true and that there is no genuine issue of material fact in dispute"; Cardwell would be "entitled to have the motion granted and final judgment entered in [his] favor"; and there would be "no trial or further evidentiary hearing and the case will be ended in this Court." (Doc. 38). Despite this direct warning to Plaintiff, he failed to file a response to Cardwell's Motion for Summary Judgment. Because the supporting evidence presented by Cardwell is undisputed, and because there is no genuine issue of

---

[1] Counsel for Plaintiff withdrew from representation on March 22, 2024. (Docs. 31, 32).

material fact in dispute for trial, Cardwell's Motion for Summary Judgment will be granted.

## I.    PROCEDURAL HISTORY

Plaintiff commenced this action in the Ninth Judicial Circuit, Osceola County, Florida, on August 26, 2022. (Doc. 1-1). On July 19, 2023, Cardwell removed this case from state court, asserting that the Court had diversity jurisdiction over Plaintiff's claim under 28 U.S.C. § 1332.[2] (Doc. 1).

On October 23, 2023, Defendant Cardwell filed a Motion to Amend Answer and Defenses to Plaintiff's Complaint (Doc. 21), and Plaintiff responded (Doc. 22). Following Magistrate Judge Norway's Report and Recommendation (Doc. 26)[3] the Court granted leave for Cardwell to add an affirmative defense (Doc. 29) pursuant to Florida Statutes § 768.36, asserting that Plaintiff is precluded from recovering damages because (1) Plaintiff was under the influence of an alcoholic beverage to the extent that Plaintiff's normal faculties were impaired and/or Plaintiff had a blood or breath alcohol level of 0.08 percent or higher and, (2) as a result of the influence of such alcoholic beverage, the Plaintiff was more than 50% at fault for his own harm. (Doc. 30 ¶ 25).

---

[2] The parties are citizens of different states and, at the time of removal, Plaintiff's medical expenses totaled approximately $464,692. (Doc. 1 ¶ 2, 3, 7).

[3] The Court overruled Cardwell's Objections (Doc. 27).

On March 29, 2024, Cardwell filed a Motion to Dismiss for Fraud Upon the Court (Doc. 34), and the Court deferred ruling. (Doc. 35). On May 31, 2024, Cardwell filed his Motion for Summary Judgment (Doc. 37), and Plaintiff failed to file a response. The matter is ripe for review.

## II.    ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must satisfy this initial burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1277 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [his] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 256 (1986) (citation and internal quotation marks omitted).

The movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect

to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "A fact is 'material' if it might affect the outcome of the suit under the governing law." *BBX Capital v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). In deciding whether to grant summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation and internal quotation marks omitted)). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead [will] accept [the non-moving party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that he is able to prove evidence sufficient for a jury to return a verdict in his favor." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996). The

party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted). Although courts must view the facts in favor of the nonmoving party, courts accept video evidence over the nonmoving party's account when the former obviously contradicts the latter. *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022).

"Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010). Therefore, in this case, federal law applies to all procedural issues and Florida law applies to all substantive issues.

### B. Undisputed Material Facts

This case arises out of a motor vehicle-pedestrian accident that occurred on Christmas Eve, December 24, 2021, on northbound State Road 91—the Florida Turnpike—in Osceola County, Florida. (Doc. 1-1). In short, Plaintiff alleges that Cardwell[4] negligently operated a motor vehicle which collided with Plaintiff while he was allegedly standing outside of a vehicle stopped along the shoulder of the road. (*Id.*).

---

[4] Cardwell was a permissive driver of a motor vehicle owned by EAN Holdings, Inc. (Doc. 30 ¶ 6; Doc. 1-1 ¶ 6). For ease of reference, the Court will refer to it as "Cardwell's vehicle."

On March 9, 2022, Cardwell's accident reconstruction engineer retrieved and downloaded images from the Advanced Driver Assistance System of the 2021 Toyota Camry operated by Cardwell at the time of the accident on December 24, 2021 (the "Toyota Camry's System"). (Doc. 37-7 (Diaz Aff.) ¶¶ 3-6). The Toyota Camry's System recorded multiple triggers occurring on December 24, 2021, including a steering-related trigger, and an event data recorder trigger, which recorded the still frames, and Cardwell provided in support of summary judgment. (*Id*. ¶ 6-8; Doc. 37-5). According to the engineer, each trigger has a time stamp, and each frame has a time position, referenced from the trigger. (Doc. 37-7 ¶¶ 9-10). The engineer created a video slideshow of the still frames in sequential order based on their respective time positions. (*Id*. ¶¶ 10-11; Doc. 37-6, Videoclip of Event Data Recorder Images on USB stick).

The following material facts are undisputed or are based on the unchallenged video created from images on the Toyota Camry's System. Leading up to the accident, Plaintiff was riding as a passenger in his nephew's car when the car stopped on the shoulder of the Turnpike, and Plaintiff exited from the backseat of the vehicle on the driver's side. (*See* Doc. 37-4 at 5-8 (Plaintiff's Dep. at 47, 64-66)). Plaintiff drank beer "pretty much all day"[5] until approximately 3:00 p.m.–three hours before

---

[5] Plaintiff testified that he did not remember feeling the effects of the four beers he had had earlier in the day at the time he exited the vehicle. ((Doc. 37-4 at 5, 13 (Dep. at 47, 107)).

the subject accident—while working at a construction site with his nephew on the day of the accident. (*Id*. at 5). Plaintiff's medical records from the Osceola Regional Medical Center from treatment directly following the subject accident report that the Plaintiff's blood alcohol was .357, and he was diagnosed with "Acute Alcohol Intoxication" and "altered mental status." (Doc. 37-3 at 1-6).

The still images show before impact that: (1) Cardwell's Toyota Camry was traveling in the left lane of the Florida Turnpike and (2) Plaintiff was on foot crossing the lanes of the Florida Turnpike from right to left—from a parked car on the shoulder of the road across the traffic lanes—in front of Cardwell's Toyota Camry immediately before impact. (Doc. 37-5 (Event Data Recorder Images) at 8-10). The video compiled by the engineer from the sequence of images (*see* Doc. 37-7) also shows that Cardwell's Toyota Camry remained in the traffic lanes, at no point did the vehicle veer onto the right shoulder of the Florida Turnpike, and the impact occurred in the left lane of the Florida Turnpike. (Doc. 37-5 at 11-21; Doc. 37-7 ¶ 14). Two of the images showing Plaintiff walking away from the vehicle parked on the shoulder and *across* the traffic lanes on the Turnpike are below:





(Doc. 37-5 at 9-10).

### C. Discussion

Plaintiff alleged that Cardwell was negligent and failed to use reasonable care in operating the vehicle by not "pay[ing] attention to traffic," obeying "the laws and rules of the State of Florida," reducing "speed to avoid a collision," or controlling "the vehicle to avoid a collision," and caused Plaintiff permanent damages. (Doc. 1-1 ¶¶ 8, 9). In Florida, to succeed on a negligence claim, "the plaintiff must prove by a preponderance of the evidence that: (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty . . . ; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages." *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008); *Dyer v. United States*, No. 6:15-cv-1231-Orl-31KRS, 2017 WL 88955, at *2 (M.D. Fla. Jan. 10, 2017); *Serrano v. Dickinson*, 363 So. 3d 162, 165 (Fla. 4th DCA 2023) (listing elements of negligence in a motor vehicle collision) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

Florida drivers have a duty to "exercise due care to avoid colliding with any pedestrian. . . and give warning when necessary and exercise proper precaution upon observing any child or any obviously confused or incapacitated person." Fla. Stat. § 316.130(15). "A finding of breach of a duty of care on the part of a defendant . . . does not establish a right to recovery by the plaintiff unless the plaintiff can also

show causation and damages." *Giter v. United States*, 2010 WL 375929, at *6 (M.D. Fla. Jan. 25, 2010) (citations omitted). "In negligence actions[,] Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury." *Gooding v. University Hosp. Bldg., Inc*., 445 So.2d 1015, 1018 (Fla. 1984) (citations omitted).

Cardwell argues that he is entitled to summary judgment on Plaintiff's negligence claim because Plaintiff has failed to prove Cardwell was negligent. To succeed in a motion for summary judgment in a negligence action under Florida law, "[t]he movant . . . must demonstrate as a matter of law either that there is no negligence or that the sole proximate cause of the injury was the plaintiff's negligence." *Oken ex rel. J.O. v. CBOCS, Inc*., No. 8:12–CV–782–33MAP, 2013 WL 2154848, at *4 (M.D. Fla. May 17, 2013) (quoting *Smith v. Grove Apartments*, LLC, 976 So. 2d 582, 585 (Fla. 3d DCA 2007)).

Cardwell argues that Plaintiff was negligent in walking into the active lanes of fast-moving traffic on the Turnpike while it was dark out and while he was wearing dark clothing, and Plaintiff's actions were the sole cause of the subject accident. (Doc. 37). Cardwell points to Plaintiff's medical records reflecting he was "acutely intoxicated" at the time of the accident and images from Cardwell's vehicle showing that Plaintiff was in the middle of the traffic lane at the time of impact. Despite the fact that Plaintiff has failed to respond to the Summary Judgment

Motion, the Court has thoroughly reviewed the record and finds that these undisputed facts are supported by the record. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (noting that a district court considering a motion for summary judgment must ensure that the material facts are supported by evidentiary materials, even if they are admitted or unopposed); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla*., 363 F.3d 1099, 1101 (11th Cir. 2004) ("The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by the evidentiary materials.").

Plaintiff's medical records from the Osceola Regional Medical Center from treatment directly following the subject accident report that the Plaintiff's blood alcohol was .357% (357 mg/dL) and that he was diagnosed with "Acute Alcohol Intoxication" and "altered mental status." (Doc. 37-3 at 1-6). Plaintiff's blood-alcohol content was more than four times the legal limit for operating a motor vehicle in Florida. *See* Fla. Stat. § 316.1934(2)(c) (blood alcohol content of 0.08 is *prima facie* evidence that a person is under the influence of alcohol for the purposes of statute prohibiting operation of a motor vehicle while under the influence of alcohol). *Cf. Zieglar v Reliance Std. Life Ins. Co*., No. 6:06-cv-1176-Orl-28, 2007 WL 9701531 (M.D. Fla. Oct. 29, 2007) (discussing insurer's justified reliance on decedent's blood alcohol test result of .183 gm/dl—twice the legal limit in Florida—

and diagnosis of "acute alcoholic intoxication" in rejecting other evidence premised on witnesses' observations that they saw him drink only two beers sometime before the accident in dispute); *McClurg v. Hartford Life & Accident Ins. Co*., No. 8:04-cv-2680-T-27TBM, 2006 WL 2801878, at \*8 (M.D. Fla. Sept. 28, 2006) (finding insurer was justified in applying "intoxication exclusion" in policy where toxicology report showed decedent's blood alcohol level of 0.13 g/dl, was "under the influence of alcoholic beverages" and "impaired" as defined by state law); *Sorrells v. Sun Life Assur. Co. of Canada*, 85 F. Supp. 2d 1221, 1224 (S.D. Ala. 2000) (holding denial of policy benefits was justified based on toxicology report showing that decedent's blood alcohol content was 0.23, nearly three times the legal limit, at the time of his single-car accident).

Cardwell argues that Plaintiff's testimony that he was on the right shoulder of the roadway at the time of the accident does not create a genuine issue of material fact in light of the images from the Toyota Camry's System showing him in the middle of the highway at the time of the accident. The Court agrees. Plaintiff's testimony regarding the accident is directly refuted by images recorded by the Toyota Camry's System in Cardwell's vehicle. Plaintiff testified at his deposition based on his memory that, after he was out of the vehicle he walked to the back of the car to urinate for about three minutes while standing in the grass, with his back to the Turnpike, and he did not step onto the traffic lanes or attempt to cross the

Turnpike from the right shoulder to the center. (Doc. 37-4 at 8-11 (Plaintiff's Dep. at 66-70)).[6] However, images captured by the Event Data Recorder in the Toyota Camry operated by Cardwell directly contradict Plaintiff's testimony regarding his position on the road during the incident.

When material facts are captured by video cameras, the court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Binding precedent from the Supreme Court dictates that a court must "not . . . rel[y]" on the parties' testimony when it conflicts with events that are "depicted by the videotape." *Id*.; *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022) (holding that the court accepts video evidence over the nonmoving party's account when the video obviously contradicts the nonmoving party's account); *Ricketts v. Pettaway*, No. 2:22-CV-889-LCB-GMB, 2024 WL 697664, at *2 (N.D. Ala. Jan. 25, 2024) (crediting the video recordings where the plaintiff's allegations based on his memory conflicted with videos from officers' body and dashboard cameras), *report and recommendation adopted*, No. 2:22-CV-889-LCB-GMB, 2024 WL 694025 (N.D. Ala. Feb. 20, 2024).

Cardwell additionally argues he is entitled to summary judgment because Plaintiff's only support for his contention that Cardwell negligently operated his

---

[6] During discovery, Plaintiff stated in Interrogatory Responses that he "was hit while standing on the side of the road." (Doc. 37-1).

vehicle "would seem to be the mere fact that an accident occurred, which is insufficient to state a negligence claim" and there is no evidence that Defendant acted negligently. (Doc. 37 at 8 (citing *Jacksonville Coach Co. v. Rivers*, 144 So.2d 308, 311 (Fla. 1962) ("The mere fact that an accident occurred resulting in injury without showing any facts constituting negligence, or from which negligence may be affirmatively assumed is not sufficient to constitute a basis for recovery."); *Peterson v. Central Florida Regional Transp*., 769 So.2d 418, 420 (Fla. 5th DCA 2000) (holding that unsupported allegation that bus driver was distracted and caused plaintiff to fall was insufficient to support claim of negligence)).

In this case, there is no evidence in the record that Cardwell was negligent, and the uncontroverted evidence instead shows Plaintiff's own negligence in crossing the lanes of traffic contributed to the accident at issue. *See Hendrix v. United States*, No. 8:19-CV-1145-SCB-AAS, 2021 WL 1997426, at *7 (M.D. Fla. May 19, 2021) (rejecting the pedestrian's argument of driver's negligence and "distraction" where there was no such evidence in the record, and the driver was "not required to anticipate a pedestrian running across the street in front him") (citing *Preger v. Gomory*, 55 So. 2d 541, 544 (Fla. 1951) (stating that "[t]he operator of an automobile is not chargeable with notice that pedestrians may be darting out in front of or behind parked automobiles" into the road)); *Bell v. A. A. Holiday Rent-A-Car, Inc*., 304 So. 2d 535, 536 (Fla. 3d DCA 1974) (stating that "[a] motorist is not an

insurer of the safety of a pedestrian who thrusts himself into the vehicle's pathway"); *see also* Fla. Stat. § 316.130(10) (stating that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk. . . shall yield the right-of-way to all vehicles upon the roadway").

To the extent that Cardwell previously sought a dismissal with prejudice of Plaintiff's claim as a sanction, arguing that Plaintiff attempted a "fraud" by "providing clearly inaccurate and misleading statements regarding relevant details of the subject accident," the Court need not reach the issue given the grant of summary judgment on the merits. It is notable that the cases Cardwell cites involve fraudulent behavior such as manufacturing evidence or lying about having "excellent health" despite applying for disability benefits. (*See* Doc. 37 at 10-12 (citing *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995) (dismissing sexual harassment claims as a sanction where the plaintiff produced "evidence" that had not been manufactured until years after the alleged harassment occurred)). Here, Plaintiff suffered extensive injuries on the night in question—multiple displaced fractures of the right leg (Doc. 37-3 at 6)—and his memory was undoubtedly diminished by his excessive level of intoxication and incoherence as noted in the medical records.[7]

---

[7] By the time the Motion for Summary Judgment was filed with the video, Plaintiff's counsel had withdrawn and Plaintiff has failed to respond to the Motion.

Based on the foregoing, it is ordered as follows:

1.      Defendant Cardwell's Motion for Summary Judgment on the merits (Doc. 37) is **GRANTED**.

2.      All pending motions are **DENIED** as moot.

3.      The Clerk is **DIRECTED** to enter judgment that Plaintiff Lebnis Rochez Mendoza take nothing on his claims, and Defendant Craig William Cardwell is entitled to costs.

4.      The Clerk is **DIRECTED** to close the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 3, 2024.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Plaintiff Lebnis Rochez Mendoza